ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JOEL CARABALLO CINTRÓN**<br><br>Recurrido<br><br>v.<br><br>**RAIDYS RODRÍGUEZ PIÑA y otros**<br><br>Peticionario | KLCE202500462 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.:<br>**PO2024CV02992**<br><br>Sobre:<br>Daños y perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, hoy 29 de enero de 2026.

Comparece ante nos la señora Raidys Rodríguez Piña (en adelante, "señora Rodríguez Piña" o "peticionaria") y solicita que revisemos la *Resolución* emitida el 18 de febrero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante la misma, el foro primario declaró *No Ha Lugar* la *Moción de Desestimación* incoada por la peticionaria.[1]

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y revocamos el dictamen recurrido.

**I.**

El 15 de octubre de 2024, el señor Joel Caraballo Cintrón (en adelante, "señor Caraballo Cintrón" o "recurrido") presentó una *Demanda* sobre daños y perjuicios contra la señora Rodríguez Piña. Alegó que, en marzo de 2024, sostuvo una relación consensual con la señora Rodríguez Piña, mediante la cual procrearon un hijo. Añadió que, el mismo día que la señora Rodríguez Piña le informó que estaba embarazada, le reveló que se practicaría un aborto.

---

[1] El recurso fue reasignado a la Jueza Cintrón Cintrón como ponente, el 2 de diciembre de 2025.

Adujo que, aunque insistió en que no lo hiciera y le solicitó que le permitiera encargarse de la criatura, el 22 de abril de 2024, la señora Rodríguez Piña terminó con el embarazo. El señor Caraballo Cintrón arguyó que, debido a lo anterior, tuvo que interrumpir su práctica profesional, sufrió ansiedad, abandono emocional y depresión, así como un profundo dolor, al no tener la oportunidad para decidir sobre la vida de la criatura.

Por igual, el señor Caraballo Cintrón argumentó que, en Puerto Rico, se prohíbe proveer o recibir un aborto que no tenga como objetivo la protección de la vida o la salud de una mujer, lo cual [,] en este caso [,] nunca ocurrió. Al mismo tiempo, subrayó que la señora Rodríguez Piña no tenía un derecho constitucional al aborto, a tenor con la normativa de *Dobbs v. Jackson Women's Health Organization*, 597 US (2022). Precisó que la clínica donde se practicó el aborto lo privó de "poder ver a su bebé" y no se le requirió su consentimiento para dicho procedimiento. Además, sostuvo que el facultativo médico que autorizó el aborto lo hizo contrario a la ley y a derecho [,] en contravención al artículo 98 y 99 del Código Penal de Puerto Rico. En suma, el señor Caraballo Cintrón discutió que los actos de los codemandados le causaron un daño irreparable a su vida, por el cual debían solidariamente responder en una suma no menor de $250,000.00.

El 17 de enero de 2025, la señora Rodríguez Piña presentó una *Moción de Desestimación*, al amparo de la Regla 10.2 (5) de Procedimiento Civil, *infra*. Esbozó que la *Demanda* pretendía castigarla por ejercer un acto legal, por la exclusiva razón de que el señor Caraballo Cintrón no brindó su consentimiento. Adujo que la reclamación concernida no precisó el nexo entre el acto culposo alegado y los daños pretendidos. Así, afirmó que, del foro primario tomar como ciertas las alegaciones en la *Demanda*, esta falló en

exponer una reclamación que justificara la concesión de un remedio a favor del señor Caraballo Cintrón.

En respuesta, el 17 de febrero de 2025, el señor Caraballo Cintrón presentó una *Oposición a Moción en Solicitud de Desestimación Total*. Esencialmente, arguyó que sufrió un daño psicológico significativo debido a la pérdida de la oportunidad de decidir sobre la vida de su hijo y la negativa de la señora Rodríguez Piña a consultarle en una decisión tan transcendental. Por ende, razonó que procedía una compensación a su favor por los daños psicológicos y emocionales sufridos.

Asimismo, el señor Caraballo Cintrón hizo hincapié en que: (1) el aborto en cuestión generó un daño emocional severo; (2) su reclamo no se basaba en la ausencia de consentimiento, sino en el daño psicológico y emocional resultante de la acción de la señora Rodríguez Piña; (3) existe un nexo causal entre el aborto y el daño emocional; (4) su reclamo tampoco se basaba en expectativas personales, sino en un daño real y concreto; la pérdida de un hijo en etapa fetal; (5) el daño emocional no podía descartarse como una mera especulación y (6) con su demanda no buscaba cambiar las políticas públicas sobre el aborto, sino obtener reparación por los daños psicológicos sufridos a raíz de una acción específica que le causó perjuicio.

El 18 de febrero de 2025, el foro primario dictó un pronunciamiento, por medio del cual declaró *No Ha Lugar* la *Moción de Desestimación* instada por la señora Rodríguez Piña.

Insatisfecha, la señora Rodríguez Piña presentó una *Reconsideración* el 5 de marzo de 2025. Razonó que el foro recurrido, al evaluar las alegaciones de la *Demanda*, debió examinar, en primer orden, si, en efecto, establecían un acto culposo de su parte. Asimismo, alegó el TPI debió considerar si el señor Caraballo Cintrón formuló un nexo causal entre el acto culposo alegado y los daños

reclamados. Añadió que el aborto concernido no era, ni es, susceptible de ser la causa por la cual el señor Caraballo Cintrón no es padre. Subrayó que no estaba obligada a llevar un embarazo a término en las condiciones y circunstancias expuestas en la propia *Demanda*, por lo cual el alegado nexo causal era especulativo.

Tras varios trámites, el 26 de marzo de 2025, el señor Caraballo Cintrón se opuso a la solicitud de reconsideración. Expuso que el referido petitorio contenía nuevos hechos que no fueron esbozados en la solicitud de desestimación. Reiteró que los principios de negligencia, abuso de autoridad y la necesidad de consentimiento en procedimientos médicos podrían sustentar una reclamación de daños en el contexto civil, si se logra demostrar que la acción de la pareja demandada fue ilícita, no autorizada y causó un daño emocional significativo a la parte demandante.

Así las cosas, el foro primario dictó una *Resolución* notificada el 27 de marzo de 2025, en la cual declaró *No Ha Lugar* la solicitud de reconsideración.

Inconforme aún, el 28 de abril de 2025, la señora Rodríguez Piña comparece ante nos mediante *Petición de Certiorari* y alega que el TPI cometió los siguientes errores:

> Erró el TPI al denegar la Moción de Desestimación de una Demanda que deja de exponer una reclamación que justifique la concesión de un remedio.

> Erró el TPI al denegar la Moción de Desestimación de una Demanda no justiciable que busca obtener un remedio civil ante el alegado ejercicio por parte de la peticionaria del derecho al aborto, un acto legal, lícito y avalado por nuestro ordenamiento que no constituye [un] acto culposo ni negligente susceptible de provocar [un] daño compensable.

> Erró el TPI al denegar la Moción de Desestimación de una Demanda que no [es] justiciable por plantear una cuestión política que requiere la abstención judicial.

Por su parte, el señor Caraballo Cintrón presentó su *Oposición a Certiorari* el 30 de mayo de 2025.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *León v. Rest. El Tropical*, 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[2]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones

---

[2] El recurso de *certiorari*, para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra*.

enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, contiene uno de los vehículos procesales disponibles para que una parte solicite la desestimación de una demanda. Entre las defensas a formularse, se encuentran la falta de jurisdicción sobre la materia y el dejar de exponer una reclamación que justifique la concesión de un remedio.

Así, al enfrentarse a una moción de desestimación de esta naturaleza, el juzgador debe dar por buenas y ciertas todas las alegaciones fácticas delineadas en la demanda y considerarlas del modo más favorable a la parte demandante. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013). No obstante, para que ello ocurra, los hechos deben ser aseverados de forma adecuada, así como también, expresados clara y concluyentemente, y que, de su faz, no den margen a dudas. *Colón v. Lotería*, 167 DPR 625, 649 (2006).

Ahora bien, el promovente de la solicitud de desestimación prevalecerá si le demuestra al TPI que —aunque se den por ciertos los hechos correctamente alegados— la demanda instada no expone una reclamación que justifique la concesión de un remedio. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

Se desprende de lo antepuesto que, el juzgador, al evaluar una solicitud de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, está obligado a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Sanfeliz, et al. v. Jta. Dir. First Bank*, supra; *Colón v. Lotería*, supra. Así, solo cuando el TPI efectúe dicho examen y esté convencido de que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar, es que procederá desestimar la demanda. *Colón Rivera et al. v. ELA*, supra,

a la pág. 1049; *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Pressure Vessels P.R. v. Empire Gas P.R.*, supra.

La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.*, supra. Entonces, es necesario considerar si, a la luz de la situación más favorable para el demandante y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Íd.*

## c.

El concepto justiciabilidad requiere la existencia de un caso o una controversia real para que los tribunales puedan ejercer válidamente el poder judicial. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 60 (2009). Así, la intervención del tribunal tendrá lugar exclusivamente si existe una controversia genuina surgida entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas. *Ramos, Méndez v. García García*, 203 DPR 379, 393-394 (2019).

Una controversia no es justiciable cuando:

(1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro.

*Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017).

Ahora, la legitimación activa significa "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Hernández Montañez v. Pares Alicea*, 208 DPR 727, 739 (2022), citando a

*Ramos, Méndez v. García García,* supra, pág. 394. Por ello, que el promovente procura demostrarle al tribunal que su interés es "de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia". *Íd.* Existe legitimación activa cuando: "(1) la parte que reclama ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre la acción que se ejecuta y el daño alegado, y (4) la causa de acción surge al amparo de la Constitución o de alguna ley". *Ramos, Méndez v. García García,* supra, págs. 394-395; *Torres Montalvo v. Gobernador ELA,* 194 DPR 760 (2016).

Por otra parte, sabido es que la jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. Por ello, la falta de jurisdicción de un tribunal incide directamente sobre el poder para adjudicar una controversia en sí. *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 385-386 (2020); *Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico,* 204 DPR 89, 109 (2020). En ese sentido, los tribunales debemos ser celosos guardianes de nuestra jurisdicción y no podemos asumirla donde no la tenemos. *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). Por consiguiente, los asuntos relacionados a la jurisdicción de un tribunal son privilegiados y deben atenderse con primacía. *Íd.*

**D.**

El Artículo 1536 del Código Civil de Puerto Rico de 2020 dispone que "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". 31 LPRA sec. 10801. Asimismo, para que surja la responsabilidad civil que regula el mencionado artículo, la parte demandante deberá establecer: (1) la existencia del daño, (2) la ocurrencia del acto culposo o negligente del demandado,

y (3) el nexo causal entre ese evento culposo o negligente y el perjuicio sufrido. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 485 (2022); *López v. Porrata Doria,* 169 DPR 135, 150 (2006).

Nuestro Tribunal Supremo ha establecido que "la culpa o negligencia es la falta del debido cuidado que consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores et al. v. Hosp. Ryder et al.,* supra; *Valle v. ELA,* 157 DPR 1 (2002). La responsabilidad extracontractual se determina a base de la ley vigente en el momento en que ocurrió el acto u omisión que dio lugar a dicha responsabilidad. Art. 1815 del Código Civil, *supra,* sec. 11720. El deber de previsión es el criterio central para que se adjudique responsabilidad por culpa o negligencia. *Cruz Flores et al. v. Hosp. Ryder et al.,* supra.[3]

### III.

Mediante sus tres señalamientos de error, la peticionaria impugna la determinación del TPI de denegar la desestimación de la demanda de daños y perjuicios interpuesta en su contra. Entiende que la demanda no expone una reclamación que justifique la concesión de un remedio y que el nexo causal alegado por el recurrido es uno especulativo. Añade que la reclamación no es justiciable, por lo que el foro *a quo* no debió permitir la continuación de los procedimientos.

Por su parte, el recurrido aduce que las alegaciones de la *Demanda* son suficientes para superar el esquema contenido en la Regla 10.2 de Procedimiento Civil, *supra.* También, expone que el TPI actuó conforme a derecho al decidir que el caso debía continuar

---

[3] Es importante destacar que, el deber de previsión no se extiende a todo riesgo posible; más bien, se debe examinar si un daño pudo ser el resultado natural y probable de un acto negligente. Es decir, se debe evaluar si después del suceso, ponderado retrospectivamente, tal daño aparece como la consecuencia razonable y ordinaria del acto que se alega fue negligente. *Íd.*; *Hernández Vélez v. Televicentro,* 168 DPR 803, 831 (2006); *Valle v. ELA,* supra.

su curso para que se atendiera en los méritos y se diera paso al descubrimiento de prueba. Está de acuerdo con la resolución impugnada y esgrime que tiene derecho a que se evalúe, bajo los hechos alegados, si la terminación del embarazo generó un daño civil resarcible. Discute que su demanda no representa una cuestión política, sino más bien una reclamación concreta y personal por daños emocionales sufridos a raíz de las acciones de la peticionaria. Es su contención que, al actuar de manera unilateral y practicarse el aborto sin consideración alguna por su alegado rol y vínculo con la criatura, la peticionaria debe asumir su responsabilidad civil conforme permite nuestro ordenamiento jurídico.

Aunque el manejo del caso y la disposición de mociones pendientes son asuntos que descansan en la sana discreción del tribunal, el marco fáctico que se nos presenta amerita nuestra intervención. Luego de estudiar de manera sosegada el expediente, notamos que las alegaciones incluidas en la demanda por el recurrido no son suficientes para cumplir con el estándar requerido. Procede desestimar la *Demanda* de referencia bajo la Regla 10.2 de Procedimiento Civil, *supra*, con el fin de evitar un fracaso de la justicia.

Al analizar el contenido de la *Demanda* de la manera más favorable para el recurrido, no encontramos que esta precise una causa de acción factible en derecho. Es decir, no se logró hilvanar un nexo causal entre la alegada conducta culposa o negligente de la peticionaria y el daño manifestado por el recurrido. Además, resulta claro que el alegado daño del recurrido es uno especulativo.

Según expuesto, la doctrina de la legitimación activa se cerciora de que un reclamante ostente la potestad para instar la causa de acción que pretende. Por ello, para que un reclamo sea justiciable, el promovente ha de tener legitimación activa. El hecho de que la peticionaria le haya comunicado que estaba embarazada

y que deseaba abortar no es suficiente para sostener la causa de acción de epígrafe.

Concluimos que el recurrido trajo a la consideración judicial un conjunto de conjeturas y percepciones que no establecen la responsabilidad de la peticionaria sobre los hechos contenidos en la demanda.

A la luz de los pronunciamientos esbozados, colegimos que el TPI erró al no desestimar la *Demanda* incoada por el recurrido.

## IV.

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se revoca la resolución objetada.

Lo acordó el Tribunal y lo certifica la Secretaria. La Juez Barresi Ramos disiente mediante opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| **JOEL CARABALLO CINTRÓN**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>**RAIDYS RODRÍGUEZ PIÑA Y OTROS**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202500462** | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **PONCE**<br><br>Caso Núm.<br>**PO2024CV02992 (602)**<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

## VOTO DISIDENTE DE LA JUEZ BARRESI RAMOS

En San Juan, Puerto Rico, hoy día 29 de enero de 2026.

Por entender que procedía *denegar* la expedición del auto de *Certiorari* incoado el 28 de abril de 2025 por la señora **RAIDYS RODRÍGUEZ PIÑA** (señora **RODRÍGUEZ PIÑA**), respetuosamente disentimos de la opinión mayoritaria por las razones que expondremos a continuación.

### - I -

Los siguientes hechos e incidentes procesales son pertinentes a nuestro razonamiento:

El 15 de octubre de 2024, el señor **JOEL CARABALLO CINTRÓN** (señor **CARABALLO CINTRÓN**) entabló *Demanda* sobre daños y perjuicios contra la señora **RODRÍGUEZ PIÑA**.[1] Adujo, entre otras cosas, que se le ha causado un daño irreparable a su vida, así como le deben solidariamente reparar los daños y angustias mentales. Ello a raíz de que sostuvo una relación consensual con la señora **RODRÍGUEZ PIÑA**; procrearon un hijo en el mes de marzo de 2024; y el 22 de abril de 2024, la señora **RODRÍGUEZ PIÑA** abortó la criatura.

---



[1] Apéndice de la *Petición de Certiorari*, págs. 5-8.

Luego de varios incidentes procesales, el 17 de enero de 2025, la señora **RODRÍGUEZ PIÑA** presentó una *Moción de Desestimación* ello al amparo de la Regla 10.2 de las de Procedimiento Civil de 2009 alegando, entre otras, que la reclamación no expuso un nexo causal entre el supuesto acto culposo y los presuntos daños.[2] De igual manera, el 17 de febrero de 2025, el señor **CARABALLO CINTRÓN** presentó su *Oposición a Moción en Solicitud de Desestimación Total.*[3] Afirmó que busca obtener reparación por los daños psicológicos sufridos a raíz de una acción específica que le causó perjuicio. Así, el 18 de febrero de 2025, se dictó la *Resolución Moción de Desestimación* impugnada.

Más tarde, el 5 de marzo de 2025, la señora **RODRÍGUEZ PIÑA** presentó un escrito intitulado *Reconsideración.*[4] Explicó, en síntesis, que el tribunal de instancia debió examinar si los hechos alegados constituyen un acto culposo de la señora **RODRÍGUEZ PIÑA** y el señor **CARABALLO CINTRÓN** debió exponer un nexo causal entre el supuesto acto culposo y los presuntos daños. Posteriormente, el 13 de marzo de 2025, la señora **RODRÍGUEZ PIÑA** presentó *Urgente Orden Protectora; Solicitud de Que el Caso se Marque como Confidencial y Solicitud de Sanciones.*[5] Por consiguiente, el 14 de marzo de 2025, el señor **CARABALLO CINTRÓN** presentó *Moción en Cumplimiento de Orden* planteando no tener reparo en marcar como confidencial el caso; así como, las partes y representaciones legales no hagan declaraciones públicas sobre el caso.[6] Así las cosas, en la misma fecha, el tribunal primario promulgó *Orden* (Entradas 19 y 23).[7]

Después, el 26 de marzo de 2025, el señor **CARABALLO CINTRÓN** presentó su *Oposición a Moción de Reconsideración.*[8] Acotó que el petitorio de reconsideración contenía nuevos hechos o argumentos que no fueron

---

[2] Apéndice de la *Petición de Certiorari*, págs. 9-14.
[3] *Íd.*, págs. 15-23.
[4] *Íd.*, págs. 26-32.
[5] *Íd.*, págs. 34-36.
[6] Apéndice de la *Petición de Certiorari*, págs. 38-39.
[7] *Íd.*, págs. 40-42.
[8] *Íd.*, págs. 43-50.



presentados en la solicitud de desestimación. Ese día, se prescribió *Resolución* manteniendo la decisión del 18 de febrero de 2025 y declarando no ha lugar la solicitud de [reconsideración].[9]

Insatisfecha, el 28 de abril de 2025, la señora **RODRÍGUEZ PIÑA** recurrió ante este foro revisor señalando el(los) siguiente(s) error(es):

> Erró el TPI al denegar la Moción de Desestimación de una Demanda que deja de exponer una reclamación que justifique la concesión de un remedio.

> Erró el TPI al denegar la Moción de Desestimación de una Demanda no justiciable que busca obtener un remedio civil ante el alegado ejercicio por parte de la peticionaria del derecho al aborto, un acto legal, lícito y avalado por nuestro ordenamiento que no constituye acto culposo ni negligente susceptible de provocar daño compensable.

> Erró el TPI al denegar la Moción de Desestimación de una Demanda que no [es] justiciable por plantear una cuestión política que requiere la abstención judicial.

Finalmente, luego de una prórroga, el 30 de mayo de 2025, el señor **CARABALLO CINTRÓN** presentó *Oposición a Certiorari*.

## - II -

### - A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[10] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[11]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[12] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[13]

---

[9] *Íd.*, págs. 1-2.
[10] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[11] *Íd.*
[12] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[13] *Íd.*



Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[14] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[15] La Regla 52.1 de las de Procedimiento Civil de 2009 instaura que los recursos de *certiorari* deben tramitarse de conformidad con la ley aplicable.[16] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

(1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
(2) en asuntos relacionados a privilegios evidenciarios;
(3) en casos de anotaciones de rebeldía;
(4) en casos de relaciones de familia;
(5) en casos revestidos de interés público; o
(6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[17]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[18]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[19] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;

---

[14] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[15] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021).
[16] 32 LPRA Ap. V., R. 52.1.
[17] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra; McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG,* 205 DPR 163 (2020).
[18] *McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG, supra.*
[19] *Íd.*



(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[20]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[21] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[22] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[23] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[24]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[25] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[26]

---

[20] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[21] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

[22] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[23] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[24] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486- 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.

[25] *García v. Asociación*, 165 DPR 311, 322 (2005).

[26] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).



**- B - *Regla 10.2 de las de Procedimiento Civil de 2009***

La Regla 10.2 de las de Procedimiento Civil de 2009 instituye que las defensas de hecho o de derecho contra una reclamación deben presentarse antes de una alegación responsiva.[27] Una moción de *desestimación* bajo la precitada regla es aquella que presenta la parte demandada previo a contestar la demanda solicitando que se desestime la causa de acción presentada en su contra, si de las alegaciones de la demanda surge que alguna defensa afirmativa derrotará la pretensión de la parte demandante.[28]

Tal pauta dispone como fundamentos para la *desestimación*: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; o (6) dejar de acumular una parte indispensable.[29]

En ese sentido, el estándar adjudicativo al evaluar una moción de *desestimación* exige que los tribunales tomen como ciertos "todos los hechos bien alegados en la demanda y considerarlos de la forma más favorable para la parte demandante".[30] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[31]

Como parte de este esquema adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[32] Ante ello, los tribunales deberán

---

[27] 32 LPRA Ap. V, R 10.2.
[28] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, LexisNexis, (2017), págs. 305- 306. *Costas Elena y otros v. Magic Sport y otros*, 2024 TSPR 13, 213 DPR ___; *Eagle Security v. Efrón Dorad et al.*, 211 DPR 70, 83 (2023).
[29] 32 LPRA Ap. V, R. 10.2; *Cobra Acquisitions v. Mun. Yabucoa, et al.*, 210 DR 384, 396 (2022).
[30] *Blassino Alvarado v. Reyes Blassino*, 2024 TSPR 93, 214 DPR___.
[31] J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2011, T. II, pág. 529 (citado en *Asoc. Importadores de Cerveza v. E.L.A.*, 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad)).
[32] *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).



evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida".[33] A grandes rasgos, se debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Así, si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones con el descubrimiento de prueba.[34]

De esta forma, solo procederá una moción de *desestimación* cuando una demanda carece de todo mérito, o la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[35] Es decir, no "procede la desestimación, si la demanda es susceptible de ser enmendada".[36] Ello toda vez que la *desestimación* conlleva "el efecto de privar a un ciudadano de la función judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar".[37]

### - C - *Justiciabilidad*

Es norma reiterada que los tribunales solo pueden adjudicar aquellos casos que son justiciables.[38] En Puerto Rico, la doctrina jurídica de *justiciabilidad* limita la intervención de los tribunales a aquellos casos en que exista una controversia genuina surgida entre partes opuestas que tengan un interés real en obtener un remedio que afecte sus relaciones jurídicas.[39] Este principio constituye una autolimitación al ejercicio del Poder Judicial de



---

[33] *Cruz Pérez v. Roldan Rodríguez et al.*, 206 DPR 261, 268 (2021).
[34] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307.
[35] *Cruz Pérez v. Roldan Rodríguez et al., supra,* pág. 267; *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013).
[36] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008).
[37] *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 746 (2005).
[38] *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727 (2022); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011).
[39] *Ramos, Méndez v. García García*, 203 DPR 379, 393-394 (2019).

arraigo constitucional y persigue el fin de evitar que se obtenga un fallo sobre una controversia inexistente, una determinación de un derecho antes de que el mismo sea reclamado o una sentencia en referencia a un asunto que, al momento de ser emitida, no tendría efectos prácticos sobre la cuestión sometida.[40] No se consideran controversias justiciables aquellas en que: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en *académica*; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro.[41] Así pues, el ejercicio válido del Poder Judicial solo se justifica si media la existencia de una controversia real y sustancial.[42]

El principio de *justiciabilidad* nos impone el deber de evaluar si la parte demandante posee *legitimación activa*[43]. La *legitimación activa* ese ha definido como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficacia actos procesales y, de esta forma, obtener una sentencia vinculante".[44] Al amparo de esta doctrina, la parte reclamante debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada; y (4) la causa surge al palio de la Constitución o de una ley.[45]

## - III -

La señora **RODRÍGUEZ PIÑA** planteó que el foro recurrido incidió: (i) al denegar la moción de desestimación de una *Demanda* que deja de exponer una reclamación que justifica la concesión de un remedio; (ii) al denegar la moción de desestimación de una *Demanda* no justiciable; y (iii) al denegar la

---

[40] *San Gerónimo Caribe Proyect v. A.R.Pe.*, 174 DPR 640 (2008); *ELA v. Aguayo*, 80 DPR 554 (1958).
[41] *Ramos, Méndez v. García García, supra*, pág. 394.
[42] *Ortiz v. Panel F.E.I.*, 155 DPR 219, 251 (2001).
[43] *Hernández, Santa v. Srio. de Hacienda, supra.*
[44] *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019).
[45] *Hernández, Santa v. Srio. de Hacienda, supra; Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2017).



moción de desestimación de una *Demanda* no justiciable por formular una cuestión política que requiere abstención judicial.

Por su parte, el señor CARABALLO CINTRÓN propuso que sus alegaciones son suficientes para superar el umbral de la Regla 10.2 de las de Procedimiento Civil de 2009. Asimismo, desplegó que el foro primario aplicó correctamente la norma al decidir que, dadas las alegaciones manifestadas, era necesario permitir el avance del caso para que este sea atendido en sus méritos.

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este Tribunal de Apelaciones debe determinar, como cuestión de umbral, si procede su expedición. Un tribunal intermedio revisor no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que hubo un craso abuso de discreción, o actuó con perjuicio o parcialidad o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y nuestra intervención en esa etapa evitará un perjuicio sustancial.

Colegimos que la señora RODRÍGUEZ PIÑA no ha demostrado que el foro recurrido actuó con pasión, perjuicio, parcialidad o que incurrió en error manifiesto. Nada en el expediente nos convenció para utilizar nuestra función revisora en esta etapa de los procedimientos. Sus planteamientos no nos mueven para inmiscuirnos en el manejo del caso o en la discreción del(de la) juez quien presidió la sala en la cual se declaró no ha lugar la *Moción de Desestimación* presentada por la señora RODRÍGUEZ PIÑA. De igual modo, no observamos error alguno de parte del tribunal primario al emitir la *Resolución Moción de Desestimación* recurrida.[46] Por ende, corresponde que la señora RODRÍGUEZ PIÑA presente su contestación a la demanda; se realice

---

[46] El Máximo Foro ha sustentado que no "procede la desestimación, si la demanda es susceptible de ser enmendada". Más aún, la Regla 6.1 de las de Procedimiento Civil de 2009 **solo** requiere que las alegaciones sean una "relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, [...] y una solicitud del remedio a que crea tener remedio". Discurrimos que las alegaciones de la *Demanda* cumplen con la Regla 6.1 de las de Procedimiento Civil de 2009 conteniendo una reclamación que justifica la concesión de un remedio y la misma es justiciable. Asimismo, que el señor CARABALLO CINTRÓN tiene *legitimación activa*.



el descubrimiento de prueba; las partes presenten su prueba en un juicio en su fondo, ocasión en la cual el Tribunal de Primera Instancia determinará si procede o no la causa de acción y si el señor CARABALLO CINTRÓN tiene derecho a alguna compensación.[47]

Por todo ello, concluimos que se debió *denegar* la expedición del auto de *Certiorari* interpuesto el 28 de abril de 2025 por la señora RAIDYS RODRÍGUEZ PIÑA y ordenar la continuación de los procedimientos ante el Tribunal de Primera Instancia, Sala Superior de Ponce.

Eileen J. Barresi Ramos
Juez de Apelaciones

---

[47] Véase *Rivera v Fagot*, 79 DPR 555 (1956).